1

2

3

4

5

6

7

8             **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CORA BUSTAMONTE,                    No. CIV S-08-2310-CMK
     on behalf of Samantha Salazar,
12   a minor,

13             Plaintiff,                <u>MEMORANDUM OPINION AND ORDER</u>

14        vs.

15   COMMISSIONER OF SOCIAL
     SECURITY,
16
               Defendant.
17
     _____/
18

19          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

20   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

21   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

22   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

23   before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-

24   motion for summary judgment (Doc. 19).

25   / / /

26   / / /

# I.  PROCEDURAL HISTORY

Plaintiff filed an application for social security on behalf of her minor child, Samantha Salazar (hereinafter "child").  In the application, plaintiff claims that disability began on January 1, 2002.  Plaintiff claims that disability is caused by a combination of bipolar disorder and post-traumatic stress disorder ("PTSD").  The claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 26, 2008, before Administrative Law Judge ("ALJ") William C. Thompson, Jr.   In a June 24, 2008, decision, the ALJ concluded that the child is not disabled based on the following relevant findings:[1]

1.  The claimant has the following severe impairment: opposition defiant disorder;

2.  The claimant does not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the impairments listed in the regulations; and

3.  The claimant has not been disabled since the date the application was filed.

After the Appeals Council declined review on August 12, 2008, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]   As the ALJ noted in the hearing decision, a three-step sequential analysis applies for claims by minors.  At step one, the issue is whether the claimant is engaging in substantial gainful activity.  If no, then the analysis continues to step two, where the issue is whether the claimant has a severe impairment.  If yes, then the analysis concludes at step three, where the ALJ must determine whether any severe impairment meets, medically equals, or functionally equals an impairment listed in the regulations.  If yes, the claimant is presumed disabled.

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:

July 3, 2006 – An initial intake assessment was completed at San Joaquin County Mental Health Children and Youth Services.  This form indicates that, at the time, the child had "not been hospitalized or received therapy" and that the child had not taken any medications. The child was diagnosed with mood disorder NOS.  Cognitive behavioral therapy was suggested.

August 8, 2006 – Agency examining psychologist David C. Richwerger, Ed.D., performed a comprehensive psychological evaluation.  Dr. Richwerger outlined the following relevant history:

Regarding psychological and emotional problems, the mother states that the child cries a lot.

Regarding behavior problems, the mother states that the child does not calm down.  She treats other people mean and teases them.  The mother states the child has had behavior problems at school in that she is disrespectful to her teachers and to other students.  She was suspended often.

Regarding learning problems, the mother states that the child sometimes has learning problems. . . .

Regarding feeling depressed, anxious, and frightened, the mother states she does not know if the child has these problems.

The mother states the child sometimes says she hears things that are not there.  This was discussed.  The child did not appear to be suffering from a psychotic process.  There was no evidence of response to internal stimuli or bizarre behavior.

Regarding sleep problems, the mother states the child has an unusual sleep pattern and she does not like to sleep at night but sleeps in the day.

There is no history of inpatient psychiatric treatment.  The mother states the child has begun outpatient counseling at San Joaquin County Mental Health Treatment Center over the past six weeks.  The mother states she goes about every two weeks.  She was referred by her mother's counselor for behavior problems, not listening, and multiple school suspensions.

/ / /

The doctor noted no history for psychiatric medication.  As to current level of functioning, the doctor reported the following:

> The mother states that the child will watch TV, play with toys, and go to movies.  The child's household tasks include taking out the garbage and cleaning the room, but she only cleans the room sometimes.  She often does not make her bed.  The mother states that the child does not get along very well with family members, and she does not have many friends either. The mother states she is off by herself often.  The mother states she had the child when she, herself, was on methadone and drugs and was in prison for six years of her life

The doctor noted that the source of background information was the mother and that the reliability of information was in the "low average range."

Following testing, Dr. Richwerger concluded that test results were not valid.  The Test of Memory Malingering was added to further investigate possible response inconsistencies. Dr. Richwerger reported the following results of this testing:

> On Trial I, the claimant had a raw score of 14 out of 50 items.  A purely chance score is 25 out of 50 items.  Any score below 18 out of 50 items indicates a greater than 95% chance of malingering, as claimants have to purposefully pick the incorrect answer.  The claimant's score of 14 out of 50 items is well below the cut-off and strongly consistent with a malingered level of effort.

The doctor also administered the Bender-Gestalt II, Wide Range Achievement Test III, and the Wechsler Intelligence Scale for Children IV.  As to all these tests, Dr. Richwerger concluded that results were not likely valid and represented a "significant underestimate" of actual ability.  Dr. Richwerger diagnosed malingering and oppositional defiant disorder.  Dr. Richwerger offered the following functional assessment:

> It is unclear if there is any impairment in cognitive functioning.

> The child appears to be able to use language in an age-appropriate manner.

> Motor development appears to be age appropriate.

> There appears to be a moderate-to-marked impairment in personal functioning based on record review.

1    The child does not appear to have any significant impairment in
     concentration, persistence, and pace to engage in sustained activity for a
2    period of time.

3    The child is not able to manage her own funds due to her age.

4    The above [functional assessment] is based on record review, discussion,
     and behavioral observations with the claimant.  Test results, however, are
5    not valid and are significant underestimates of the child's actual cognitive
     ability due to a performance consistent with low effort.

6

7         October 4, 2006 – Agency consultative doctor R.Y. Hood, M.D., submitted a

8    childhood disability evaluation form.  While the doctor opined that the child has a severe

9    impairment, he also concluded that the impairment does not meet, medically equal, or

10   functionally equal a listed impairment.  As to the six domains of functioning which are assessed

11   as part of a functional equivalence analysis, Dr. Hood concluded that the child is less than

12   markedly limited in the domains of acquiring and using information and attending and

13   completing tasks.  The doctor found that the child is markedly limited in the domain of

14   interacting and relating with others.  Plaintiff does not have any limitation in the other domains.

15        April 4, 2007 – Agency consultative doctor Frank Williams, M.D., prepared a

16   childhood disability evaluation form.  He concluded that the child has oppositional defiant

17   disorder, a severe impairment, but that the impairment does not meet, medically equal, or

18   functionally equal an impairment set forth in the regulations.  As to functional equivalence, the

19   doctor opined that the child has no limitation in any area except acquiring and using information,

20   attending and completing tasks, and interacting and relating with others, as to which categories

21   the doctor assessed the child with "less than marked" limitations.

22        May 8, 2007 – The child was reported to be showing improvement with

23   medication.  The child's mother reported that "patient is coming out of her room more and

24   interacting more with others in the house."

25   / / /

26   / / /

1         June 14, 2007 – An annual assessment was prepared at San Joaquin County

2    Mental Health.  On mental status examination, the child showed congruent affect and neutral

3    mood.  The child's thought content was normal and unremarkable.

4         June 26, 2007 – The child's mother reported to treating professionals that the

5    child was showing signs of improvement with current medication.

6         August 16, 2007 – Records indicate that the child "has not been compliant with

7    her medication."

8         October 18, 2007 – Records from treating medical providers indicate that the

9    child "[s]till has poor compliance with medication."

10        December 12, 2007 – Treating doctor Michael Lin, M.D., reported as follows:

11        This is a girl who has a significant history even prior to birth.  She
     was exposed to IV heroin during critical developmental periods in her
12   mother's uterus.  She was born with heroin withdrawl and therefore placed
     on a methadone detoxification program.  Her mother's presence was
13   minimal as she was in and out of prison for drug related charges.  She has
     symptoms that are consistent with bipolar type II.  However, in addition to
14   her bipolar illness, she has also witnessed and experienced several
     traumatic events in her life.  She has frequent flashbacks in the form of
15   nightmares.  She cannot tolerate loud or crowded places.  She is not able to
     tolerate having her personal space violated and tend[s] to externalize her
16   reactivity.  She is very hypervigilent and stays up at night because of fear
     that someone might come into the house.  She is described as very easily
17   startled and cannot stay in the dark.  Her PTSD and bipolar disorder
     combination is most likely contributing to her significant behavioral
18   problems in school.  She is mainstreamed and admits that she cannot
     tolerate being in such close quarters with other peers who had in the past
19   "jumped" her.  She admits that she feels fearful and threatened by some of
     the peers.

20

21        February 20, 2008 – Dr. Lin submitted a final medical report.  Dr. Lin stated that

22   he first treated the child on April 5, 2007, and last treated her on January 23, 2008.  The doctor

23   noted "mild improvement" with treatment.  The doctor assessed the child as being markedly

24   impaired in the domains of age-appropriate cognitive/communication function and age-

25   appropriate social functioning.

26   / / /

### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# IV. DISCUSSION

Plaintiff's argument, in its entirety, is as follows:

> In this case, the minor's psychiatrist, on the basis of her three years of treatment, concluded that she met or equaled Listing 112.04 (Tr. 411). Dr. Lin concluded that the child's Bipolar Disorder Type II, and chronic post-traumatic stress syndrome were of sufficient severity to meet or equal this Listing. Two other treating psychiatrists also diagnosed Bipolar Disorder Type II, and chronic post-traumatic syndrome (Tr. 356-392). Dr. Lin also concluded that Samantha had a marked impairment in age-appropriate cognitive/communication function and a marked impairment in age-appropriate social functioning. The state agency psychiatrist Dr. Richwerger concluded that Samantha had a valid moderate to marked impairment in social development and at least a moderate impairment in personal functioning. The ALJ in denying this minor, claimed that she went to psychiatric mental health after she filed the claim (Tr. 12), and appears to have based his entire decision on that mistake of fact. The record clearly shows that Samantha received mental health treatment for a year and a half before the claim was filed. The ALJ dismissed the conclusion of Samantha's treating psychiatrists as opinion, and then substituted his own opinion and those of non-examining physicians (Tr. 16). The ALJ failed to even mention the positive findings of Dr. Richwerger. Finally, the ALJ seems to lack the basic understanding of mental disability when he discusses Listing 112.04, when he states that this listing requires "vegetative symptoms" (Tr. 13). This is incorrect as a matter of law.

From this, it appears that plaintiff argues: (1) the ALJ failed to properly assess the medical opinions; and (2) the ALJ erred in his analysis of Listing 112.04.

Initially, the court addresses plaintiff's contention that the ALJ based his decision on the mistaken belief that the child did not first seek mental health treatment until after the application for benefits was filed. According to plaintiff, the child received mental health treatment for a year-and-a-half prior to the application filing date. This contention, however, is not supported by the record before the court. Specifically, the CAR contains no mental health treatment records prior to July 3, 2006, which is the date of the child's initial intake assessment at San Joaquin County Mental Health. In addition, Dr. Lin – the Child's treating psychiatrist – indicated in his February 2008 assessment that he first treated the child in 2007. Plaintiff does not cite to any specific portion of the CAR containing mental health treatment records prior to the application filing date, and the court can find none.

## A.   <u>Evaluation of the Medical Opinions</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  <u>See</u> <u>id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  <u>See</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  <u>See</u> <u>Lester</u>, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  <u>See</u> <u>Lester</u>, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  <u>See</u> <u>id.</u> at 831.  In any event, the Commissioner need not give weight to any

1  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

2  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

3  see also Magallanes, 881 F.2d at 751.

4         Plaintiff appears to argue that the ALJ improperly "dismissed the conclusion of

5  Samantha's treating psychiatrists as opinion, and then substituted his own opinion and those of

6  non-examining physicians."  As to the medical opinions, the ALJ stated:

7         As for the opinion evidence, I give substantial weight to the assessment of
        the State Agency medical consultants and consultative examiner to the
8        effect that Samantha does not have marked or extreme limitations in any
        of the relevant domains (2F, 3F, 6F).  These assessments are wholly
9        consistent with the weight of the evidence of record and rendered by
        physicians who are experts in the evaluation of the medical issues in
10       disability claims under the Social Security Act.

11       I give little weight to the assessment of Michael Lin, M.D., because, as
        expressed, it is quite conclusory providing very little explanation of the
12       evidence relied upon in forming that opinion (9F).  Dr. Lin apparently
        relied quite heavily on the subjective report of symptoms and limitations
13       provided by Samantha and her mother, and seemed to uncritically accept
        as true most, if not all, of what the claimant reported.  Yet, as explained
14       elsewhere in this decision, there exist good reasons for questioning the
        reliability of the claimant's subjective complaints.

15

16  The court finds no error in this analysis.  As the ALJ correctly observed, Dr. Lin's treatment

17  notes are long on subjective complaints from the child and her mother and short on actual

18  objective findings to support any particular diagnosis or opinion.  Specifically, turning to the

19  February 2008 assessment – which is the only place Dr. Lin expresses the opinion that the child

20  has any marked impairment – the court observes that Dr. Lin references no objective clinical

21  findings in support of the opinions expressed.  In contrast, agency examining physician – Dr.

22  Richwerger – supported his opinions with reference to objective findings on mental status

23  examination (primarily evidence of malingering and lack of effort).

24  / / /

25  / / /

26  / /

1    **B.    Listing Analysis**

2    The Social Security Regulations "Listing of Impairments" is comprised of

3    impairments to fifteen categories of body systems that are severe enough to preclude a person

4    from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

5    C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

6    irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

7    the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

8    1985).  In cases involving minor claimants, the ALJ must also consider functional equivalency

9    in six domains of functioning: (1) acquiring and using information; (2) attending and completing

10   tasks; (3) interacting and relating with others; (4) moving about and manipulating objects;

11   (5) self-care; and (6) health and physical well-being.  For an impairment to functionally equal a

12   listed impairment, the child must be markedly limited in at least two domains, or extremely

13   limited in at least one domain.  See 20 C.F.R. § 416.926a(d).

14   Before addressing plaintiff's specific argument concerning the ALJ's domain

15   analysis, the court turns to plaintiff's argument that the ALJ incorrectly determined that

16   vegetative symptoms were required for Listing 112.04 to apply.  In this regard, the ALJ stated:

17
     I considered the requirements of listing 112.04 for mood disorders and
     listing 112.06 for anxiety related disorders but find that Samantha does not
18   suffer the vegetative symptoms in combination with the marked
     restrictions [of] cognitive and social functioning as documented by
19   appropriate standardized psychological tests.  (emphasis added).

20   Plaintiff is incorrect if she reads this portion of the opinion as reflecting the ALJ's belief that

21   vegetative symptoms are a stand-alone requirement for application of the referenced listing.  As

22   the ALJ made clear, such symptoms are required in combination with certain marked restrictions.

23   In this case, there is no evidence of any marked restrictions.  Thus, regardless of whether

24   vegetative symptoms exist or not, given the lack of marked restrictions, Listings 112.04 and

25   112.06 cannot be met.

26   ///

As to the six domains of functional equivalence, the ALJ stated:

Acquiring and Using Information

The claimant has less than marked limitation in acquiring and using information.  Samantha's behavior during the psychiatric evaluation invalidated the testing and the consultative examiner noted that the results significantly underestimated Samantha's cognitive abilities (6F).

Interacting and Relating with Others

The claimant has less than marked limitation in interacting and relating with others.  Although Samantha does have difficulty interacting and relating with others, those difficulties appear related to authority figures and are less than marked.

Moving About and Manipulating Objects

The claimant has no limitation in moving about and manipulating objects.  There is no credible evidence of difficulties in this domain.

Caring for Yourself

The claimant has no limitation in the ability to care for herself.  There is no credible evidence in difficulties in this domain.

Health and Physical Well-Being

The claimant has no limitation in health and physical well-being.  There is no credible evidence of difficulties in this domain.

The ALJ concluded:

Accordingly, the claimant does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

The court finds that the ALJ's functional equivalence analysis is supported by the record.  As discussed above, the ALJ properly rejected Dr. Lin's assessment of marked limitations.  Only Dr. Hood found a marked limitation (in the domain of interacting and relating with others).  No doctor found a marked limitation in two or more domains, or an extreme limitation in any domain.  Thus, as the ALJ concluded, the evidence of record does not support a finding of functional equivalence.

///

**V.  CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 16) is denied;

2.    Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 30, 2010

Craig M. Kellison
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE